CHANCERY.                    **Crane** *vs* **Gunn, &c.**

*Case 6.*        APPEAL FROM THE LOUISVILLE CHANCERY COURT.

                     *Evidence.   Assignor and Assignee.*

*Sept.* 11.      JUDGE MARSHALL delivered the opinion of the Court.

Case stated.

THIS bill was filed by Gunn and Thatcher to enjoin $300, part of a judgment on a note for $600, executed by them to Hemming and Townly, and assigned to Crane. They alledge that the note was given to secure the price of a Barouche, sold by Hemming and Townly to Gunn; that the purchase by Gunn was induced by the fraudulent misrepresentation and warranty of the vendors; that soon afterwards Gunn discovered that the Barouche was greatly defective, and immediately required a cancelment of the contract, or an abatement of the price, neither of which was obtained, though the defects were admitted, and that the note was assigned to Crane, who appears, though it is not so alledged in the bill, to have been the owner and manufacturer of the Barouche which, with other carriages, Hemming and Townly were selling as his agents. The bill further alledges that Hemming and Townly, and each of them, are insolvent, and that Crane is a non-resident.

Hemming and Townly, though served with process, did not answer the bill, and its allegations were taken *pro confesso* as to them. But Crane answered in detail, denying all the material allegations except that the note was given for the price of the Barouche, and without any proof of what took place at or before the original purchase. Upon the confession of the bill by Hemming and Townly, and the evidence of two witnesses going to show that the Barouche was defective in the top so as to leak, whereby the inside was injured, and that it was not worth more than $400, the Chancellor perpetuated the injunction for more than $200.

The Chancellor's decree.

If this decree stood merely upon deductions drawn from the evidence of the witnesses, we should have

deemed it sufficient to say that the equity set up against Crane was not supported by the proof. But the decree is based upon the proposition substantially asserted by the Chancellor and attempted to be sustained by a learned and ingenious argument contained in the record, that upon principles of justice and equity, and by a proper construction of the statute authorizing the assignment of notes, bonds, &c., the obligor is not only entitled as against the assignee to all equities existing against the obligee before notice of the assignment, but is also entitled. in a contest with the assignee, to prove his equity against the obligee, so far at least as it rests upon the acts of the latter before notice of the assignment, by the same means or modes of proof, and in effect by the same identical evidence that would be allowable in a contest with the obligee himself. And that as in such a contest, the admissions of the obligee in his answer, or by failing to answer, would have been evidence against him before notice of the assignment, so they should be evidence against the assignee though made afterwards.

With whatever force of argument the correctness of these propositions, and of a corresponding construction of the statute may be maintained, the conclusions to which they lead, as exemplified by the decree of the Chancellor, are in direct opposition to principles uniformly applied to the particular subject by this Court, and which have been often expressly declared, and in almost numberless instances impliedly sanctioned by it. Indeed we should scarcely feel justified in departing from a construction of the statute, settled by a uniform practice of forty five years, by any reasoning upon abstract principles, or by any definitions of the general terms used in the statute, which however plausible they might seem, tend to unsettle the law as it has so long been understood. We should rather, in such a case, distrust our own powers of analysis, or at least we should be disposed to acquiesce in a construction which, though we might not be entirely satisfied with it, yet having the sanction of numerous judicial precedents, and a long acquiescence on the part of the public and the Legislature, would have

The admission, expressed or implied, of an assignor after the assignment of a note, though of matters existing before the assignment or notice thereof, are not evidence against the assignee.

the strongest evidences of its being a correct exposition of the law.

The simple question is, whether the admissions, express or implied, of the obligee of an assigned note, accruing after notice of the assignment, but relating to facts which existed before the assignment or before notice of it, are to be taken as evidence against the assignee who denies those facts. Does the statute in providing that nothing therein contained shall alter the nature of the defence, either in law or equity, that any defendant may have against an assignee or the original assignor, (1 *Stat. Law.* 150,) mean, not only that the obligor may prove against the assignee the same facts with the same effect as he might do in the same tribunal against the assignor if he were seeking a recovery on the note, but also that he may prove these facts against the assignee by the very same, and by any evidence that would have been admissible against the assignor?

If it be conceded that "the rules of evidence" and "modes of proof" constitute a part of "the nature of the defence" which the statute declares shall not be changed, then the utmost consequence as to these points will be, that the same rules of evidence and modes of proof shall prevail in any suit between the assignee and obligor, as would prevail between the obligor and obligee; and that these rules and modes shall prevail as well with regard to the evidence furnished by the acts and admissions of the parties as with respect to other particulars, which would be the law if the proviso were not in the statute.

Admissions of a party evidence against himself and others likewise in cases of combination, & other cases when in contemplation of law he represents others, but not against strangers.

By the rules of evidence, the admissions of any party, having an interest in the subject, are, whenever made, evidence against himself. But it is also a rule, founded on reason and experience, that the acts or admissions of one man shall not affect another, unless by reason of combination or privity, or some peculiar relation, the one in contemplation of law so far represents the other as to be authorized to act or speak for both, or to bind the other by his acts or declarations. Under these principles, it has long been held that the acts or admissions of a vendor, while he was proprietor of the subject which would be evidence against him in that condition of things, may

be proved in evidence against the vendee after the transfer, and may affect the property in his hands, as they might have affected it in the hands of the vendor, when they were done or made; but that the acts or declarations of the vendor, after the transfer, constitute no evidence against the vendee, and cannot affect the property in his hands, because they are the acts and admissions of a stranger who, at the time, in no manner represents the property or its owner, and has no right to bind or affect either; all which is entirely consistent with the general rule, that the acts and declarations or admissions of any person shall not be evidence against a stranger.

Certainly the assignor of a note, or other thing, having sold and transferred it to another, cannot, after the assignment, be regarded either as having any further control over the thing, or as in any manner representing the assignee. On what principle then shall the subsequent admissions of the assignor affect the one or the other? It would be in direct opposition to the rules of evidence which the statute is assumed to have declared to be unchangeable in these contests, to say that such subsequent admissions shall be received as evidence against the assignee to affect the note in his hands.

Again, with regard to the modes of proof which are said to constitute a part of the defence or of its nature, which is to remain unchanged; we do not perceive in this feature of the definition, any sufficient lever for overturning the long settled practical construction of the statute. The bill in Chancery is, it is true, one mode or means of obtaining proof from the defendant, by the statements of his answer, or by his failure to answer. And the answer itself, or the failure to answer, furnishes a mode of proof as to the facts thereby expressly or impliedly admitted. But against whom is the bill in Chancery or of discovery, or the answer, or the order taking the bill for confessed a mode of proof? And against whom do any or all of these modes of proceeding furnish proof? Is there now, or was there when the statute in question passed, any established principle as to the modes of proof which made the answer of one man, or his failure to answer, evidence against another, unless in the cases where, under the rules

The statute in relation to assignments, did not change the rules of evidence in contests in chancery arising between the obligor & assignee.

of evidence already noticed, the acts or admissions of the one would be admissible against the other? The modes and means of proof must be in subservience to the rules of evidence. The mode of proof by bill of discovery, is not a mode of proving facts against one party, by the admission or default of another, except under the circumstances before referred to. It was not so before the statute, and in declaring that the nature of the defence shall remain unchanged, it has not been supposed that the statute intended to introduce a new principle in this respect. The obligor still has the mode of proof furnished by the bill of discovery, and the answer or failure to answer. But this proof, when obtained, operates now as it did before the statute, against the party who answers or is in default, and not against others whom he has no right to bind.

It is further said, that no one can, by his own act, after a party has a right to his evidence, deprive that party of his evidence: but waiving enquiry as to the true import of this principle, and how far it may be subject to qualification, we do not perceive, that so far as it is applicable to the present subject, it necessarily militates against the doctrine which we have asserted. The acts and declarations of the assignor before the assignment, which are then evidence against him, remain evidence against the assignee after the assignment. And the assinor himself, who might, at the option of the obligor, be called on in many cases to prove those facts against himself when there is no assignment, may also be called on after assignment, to prove the same facts against himself as a defendant, and against the assignee as a witness, in which last case, being under oath, and subject to cross examination, his statements will properly be evidence against a stranger. But suppose that under the concession, that the rules of evidence and the modes of proof, are included in the phrase "the nature of the defence," this reasoning should not be deemed sufficient, in point of strict logic, to relieve the assignee from the effect of admissions of the assignor, made after the assignment. Is there, or was there, at the date of the statute, any established definition or universal understanding of the pre-

·cise import·of the phrase, which ·oould render it certain that it was used in the statute with this comprehensive meaning? Will nothing less satisfy its terms? Is it not a phrase vague and indefinite, no where strictly defined, most generally used without any distinct apprehension of all the particulars which it may possibly embrace, and which is to have its practical construction, by reference to the context? There is nothing in the previous part of the statute which relates to or endangers the established rules of evidence or ·modes of proof. But as the first proviso allowed the defendant all discounts, which, under the rules and ·regulations prescribed by law, he could prove on the trial either against the plaintiff ·or against the obligee, before notice of the assignment, it may possibly have been apprehended that this first proviso might be understood as giving a defence at law by proving on the trial merely equitable discounts; and it may be that the second proviso, declaring that nothing in the act should be construed to change the nature of the defence, may have been introduced for the purpose of repelling any such inference. If the phrase in question may be understood as .including not only the substance, but also the manner, and all the incidents of the defence, it may also be un-derstood as referring merely to the substance, and as ·equivalent to the words "sort, or kind, or species of de-fence."

But this phrase stands and has stood for forty-five years ·in a statute, by which transactions and the rights growing out of them, infinitely numerous and of hourly oc-currence, have, during that period, been regulated. And although it may never have undergone a formal discus-sion in this Court in reference to the present question, the question itself, as already stated, has often been ex-pressly decided, and the construction implied in those decisions has still more frequently received the silent sanction of the Court. As early as the case of *White, &c.* vs *Robinson,* (1 *A. K. Marshall,* 569,) which was a bill of injunction by the obligor against the obligee and his assignee, setting up usury in the original transaction, which was denied by the assignee, and unanswered by the obli-gor, the Court in its opinion uses this language, ''no

The rule of evi-dence that the answer of one defendant not evidence against another, again recognized.

practice is better" settled, "or has been more frequently acted upon and recognized by the decisions of this Court, than that the answer of one defendant cannot form the basis of a decree against others. Those cases in which the Court has heretofore applied the rule, are not only in principle like the present, but some of them so perfectly analagous as to furnish conclusive authority against the decree of the Court below," which decree had given relief against the assignee. In the case of *Turner, &c.* vs *Holeman,* (5 *Monroe,* 410,) which was between parties standing in a similar relation as those in the last case, and when the equity set up affected the consideration and terms of the note, the decree below had been based on the answer of Holeman, the assignor, who admitted some of the material allegations of the bill, and it gave relief against the assignee. The Court in reversing that decree, say "it has been so often decided by this Court, that the answer of one defendant is not evidence for or against another, and that in the case of an assignor and assignee being joint defendants, that it is now unnecessary to make a parade of authority by citing the cases, therefore the answer of Holeman," (who was the assignor,) "cannot be used against Turner," the assignee. The case of *Fanning* vs *Pritchell, &c.* (6 *Monroe,* 79,) is understood to be to the same effect. In the case of *Timberlake* vs *Cobb,* (2 *J. J. Marshall,* 136,) it is expressly decided, that the silence of the obligee, who failed to answer, is no evidence against his assignee as to the consideration of the note. In *Davis* vs *Harrison, &c.* (2 *J. J. Marshall,* 189,) the same rule is also expressly declared as the foundation of a reversal. The general principle, that the answer of one defendant is not evidence against another, except in case of combination or other peculiar relation, has been still more frequently reiterated. In the case of *Winters* vs *January & Son,* (*Littell's Selected Cases,* 13,) decided in 1800, the rule is laid down, with its exceptions, in conformity with what has been said in this opinion, and we do not know that it has ever been departed from. We do not feel authorized now to make a new exception, on the ground of a new construction of the statute, in opposition to that which has had the sanc-

tion of nearly half a century, and we find no peculiar inducement for making such an innovation in a case in which the assignors are alledged in the bill to be wholly insolvent, and are proved to have been mere agents of the assignee, when the effect would be to convert the silence of those who have little, if any, motive to answer, into evidence against the only party who ever had any substantial interest in the note.

The decree against Crane is therefore reversed. And although, by the failure of Hemming and Townly to answer, the allegations of the bill are established as against them, and constitute a ground of claim to some extent; yet as the Chancellor does not, except on some special ground, entertain jurisdiction to give damages for a breach of warranty on a sale, and no such special ground is alledged, the complainants are not entitled to any relief in this case, but must be remitted to their appropriate remedy.

The case is therefore remanded, with instructions to dismiss the bill, without prejudice to any remedy against Hemming and Townly.

*Duncan* for appellant.